FRANCIS et al. v. CENTRAL NAT. BANK OF WACO. (No. 136.)

(Court of Civil Appeals of Texas. Waco. Jan. 15, 1925.)

1. Chattel mortgages ⬤⟾227—Maker's promise to give surety proceeds of drilling rig held not binding on bank to which rig was transferred to secure another debt.

Maker's promise, after surety signed notes, to give her proceeds of drilling rig, when he sold it, to secure her against loss, was not binding on bank to which he transferred rig to secure another debt before surety signed.

2. Contracts ⬤⟾79—Bank officer's promise to first apply proceeds of property held as security for debt to bank on other notes held without consideration.

Bank officer's promise to surety, long after notes sued on were executed and rights of all parties fixed, that proceeds of property transferred to bank by maker to secure another debt would be first used to pay notes, *held* without consideration, and not binding on bank.

Appeal from District Court, Navarro County; Hawkins Scarborough, Judge.

Action by the Central National Bank of Waco against W. C. Francis and another. Judgment for plaintiff, and defendants appeal. Affirmed.

Callicutt & Johnson, of Corsicana, and Bryan & Maxwell, of Waco, for appellants.

Jester & George, of Corsicana, and Spell, Naman & Penland, of Waco, for appellee.

BARCUS, J. Appellee filed suit against W. C. Francis and Mrs. B. H. Oates to recover the balance due on two promissory notes of $8,000 each, dated October 8, 1920, due 12 and 18 months from date. W. C. Francis filed a general denial. Mrs. Oates filed a general denial, and pleaded specially that she executed the notes as surety for Francis, and that a short time after she had signed the notes Francis owned a drilling rig which he sold to A. R. Lewis and received in payment therefor a note for $7,500, secured by mortgage on the drilling rig, and some real estate; that after same was sold Francis offered and agreed to deliver the note and property which he got for the drilling rig to her to secure her against loss for having signed the two $8,000 notes at the bank, and that when he offered same to her she directed him to deliver same to the ap-

pellee bank, since the bank held the notes; that said note was delivered to the bank and the real estate transferred to the bank to secure said two $8,000 notes. She further alleged that after the note and real estate had been transferred to the bank she talked to R. B. Dupree, the vice president of the bank, and he advised her that the collateral paper had been left with the bank. At the time appellant Mrs. Oates signed the two $8,000 notes on October 8, 1920, Francis was indebted to appellee bank in an additional sum of $6,000, and same was secured by a bill of sale to the drilling rig owned by Francis which he had executed and delivered to said bank, said note and bill of sale being dated October 7, 1920, one day before the two notes for $8,000 were signed. The notes for $8,-000 each, however, were renewal notes that had been due the bank by Francis individually.

The cause was tried to a jury, and at the conclusion of the testimony the trial court instructed the jury to return a verdict for appellee bank for the unpaid balance on the two notes of $8,000 each.

Appellee bank, after it took the bill of sale to the drilling rig to secure the $6,000 note, authorized Francis to sell said rig for it, and same was sold by Francis, and he obtained therefor a note for $7,500 and certain real estate in Navarro county. Francis transferred the note and real estate received for the drilling rig to appellee bank, and it collected $3,600 on the $7,500 note, and applied same on the $6,000 note, and sold a sufficient amount of the real estate to pay the balance due on the $6,000 note. The remainder of the proceeds derived from the property transferred to it by Francis was applied on the $8,000 notes. Appellant Mrs. Oates claims that Mr. Dupree, the vice president of the bank, agreed with her that all the proceeds derived from the sale of the oil rig would be applied on the two $8,000 notes. This the vice president of the bank denied. The question for determination is whether there was any issue which should have been submitted to the jury.

[1, 2] It being an undisputed fact that at the time Mrs. Oates signed the two notes for $8,000 Francis had already transferred the drilling rig to the bank to secure another debt, his promise to her after she had signed the notes that when he sold the rig he would give her the proceeds to secure her against loss for having signed same, was not binding on the bank, and did not in any way affect the bank's lien on the drilling rig to secure the $6,000 note it held against Francis. Any statement or action that Francis may have made or taken with reference thereto could not in any way inure to Mrs. Oates' benefit to the detriment of the bank. If the vice president of the bank, long after the notes were executed and the rights of all parties were fixed, had promised Mrs. Oates

that the proceeds from the drilling rig would be first used to pay the $8,000 notes, same was without consideration and not binding on the bank, and would not affect the bank's lien on the rig to secure payment of the $6,-000 note, and would not prevent the bank's using the first of the proceeds from sale of the drilling rig to pay the $6,000 note. Under the undisputed evidence, all of the proceeds from the sale of the drilling rig except the amount necessary to pay the $6,000 note were applied on the two $8,000 notes, and that was all Mrs. Oates was entitled to under her pleadings and under the undisputed evidence. The trial court did not commit error in instructing the jury to return a verdict for appellee.

The judgment of the trial court is affirmed.